# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 17, 2020

158201

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

BRENDAN BOMAN,
      Plaintiff-Appellant,

v

CATHOLIC DIOCESE OF GRAND RAPIDS,
d/b/a GRAND RAPIDS SECONDARY SCHOOL,
TOM MAJ, GREG DEJA, and KYLE SHELTON,
      Defendants-Appellees,
and

ABIGAIL SIMON,
      Defendant.

SC: 158201
COA: 338458
Kent CC: 15-010779-NO

_____/

On order of the Court, the application for leave to appeal the June 26, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CAVANAGH, J. (*dissenting*).

I dissent from the Court's order denying leave to appeal in this case. I believe this Court should consider whether the Court of Appeals erred by affirming summary disposition of plaintiff's claims based on direct negligence and vicarious liability arising from the sexual abuse of plaintiff by defendant Abigail Simon, an employee of schools operated by defendant Catholic Diocese of Grand Rapids, while plaintiff was still a minor.

In order to sustain his claim of direct negligence, plaintiff was required to establish (1) a duty owed by defendants to plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Henry v Dow Chem Co*, 473 Mich 63, 71-72, (2005). While the Court of Appeals recognized that teachers stand *in loco parentis* to their students and hence owe a duty to exercise reasonable care over the students in their charge, *Gaincott v Davis*, 281 Mich 515, 518-519 (1937), the Court of Appeals concluded, without any analysis, that the doctrine of *in loco parentis* did not extend to defendants in this case—the Diocese, administrators, and coaches. It is not at all clear to me that, while the law imposes "surrogate parent" status on teachers and an obligation to protect children placed in their care, the law does not impose the same or similar status and obligation on adults in defendants' positions who have similar relationships to minor students as teachers. The nature and extent of the doctrine of *in loco parentis* are jurisprudentially significant issues warranting consideration by this Court.

The Court of Appeals concluded that, even assuming that the doctrine of *in loco parentis* extended to defendants, plaintiff could not maintain his negligence claim because Ms. Simon's sexual molestation of plaintiff was not reasonably foreseeable to defendants. Foreseeability of the risk or danger is a requirement for the existence of a duty to protect an identifiable person or class of people from criminal conduct. *Hersh v Kentfield Builders, Inc*, 385 Mich 410 (1971). "Foreseeability . . . depends upon whether or not a reasonable man could anticipate that a given event might occur under certain conditions." *Samson v Saginaw Professional Bldg, Inc*, 393 Mich 393, 406 (1977). As we observed in *Schultz v Consumers Power Co*, 443 Mich 445, 452 n 7, "[a] plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that some injury to the plaintiff was foreseeable or to be anticipated." Importantly, where reasonable minds could differ, foreseeability is a question for the jury. *Samson*, 393 Mich at 407.

Citing *Brown v Brown*, 478 Mich 545 (2007), the Court of Appeals concluded that Ms. Simon's abuse of plaintiff was not reasonably foreseeable. But in *Brown*, in contrast to this case, the perpetrator did not display any *conduct* toward the victim that would have put defendant on notice of the eventual sexual assault; rather, the perpetrator engaged only in "lewd" and "tasteless" sexual comments directed at the victim. See *Brown*, 478 Mich at 562 (characterizing the issue in that case as "whether an employer is entitled to judgment as a matter of law when the sole basis for imposing liability for an employee's rape of a third party is the employee's lewd and offensive *comments*"); see also *id*. at 547-548 (holding that "where an employee has no prior criminal record or history of violent behavior indicating a propensity to rape, an employer is not liable *solely on the basis of the employee's lewd comments* for a rape perpetrated by that employee if those comments failed to convey an unmistakable, particularized threat of rape") (emphasis added). Here, the record shows that Ms. Simon engaged in inappropriate and troubling conduct that was known to (indeed, sometimes observed by) the assistant football coach and associate athletic director at West Catholic, the dean of students at West Catholic, the principal at West Catholic, and others at Catholic Central. For example, the principal at West Catholic testified that she had concerns about Ms. Simon's behavior at school, having observed inappropriate conduct during Ms. Simon's study hall class:

> But there was very—it was very apparent that there were issues of students as far as physical personal space that were not what I would consider to be healthy for a tutor or teacher/student relationship.
>
> * * *
>
> But it didn't take very long for us to notice that there were other issues. Students would come to her desk and they would always be looking at her computer. It was all the males, and they would be uncomfortably close to

Mrs. Simon [sic]. So our dean of students got in the habit of walking in there on a regular basis, and then of course the students would scatter. I would occasionally walk in there, and of course our administrative assistant has kind of the evil eye look and would give that to the students surrounding the desk.

A teacher at West Catholic informed the principal that he observed Ms. Simon acting "too friendly" to male students in particular. In fact, this teacher told the principal that, had a male teacher acted the same way toward female students, he would not be allowed to work at the school. A coach, the dean of students, and the principal at West Catholic all observed an incident in which Ms. Simon was sitting alone with a male student during mass, describing her "blatant [show] of affection [toward the student]" and "[seeking] him alone out to sit next to" as troubling, inappropriate, and unhealthy.

While the Court of Appeals characterized this evidence as Ms. Simon having "personal space" or "class management" or "professionalism" issues, whether that is an accurate characterization or whether Ms. Simon's conduct was more accurately characterized as victim grooming and predation of minors that foreseeably led to the sexual molestation of plaintiff is an issue warranting further consideration by this Court. See *Hersch*, 385 Mich at 413 (" 'The employer's knowledge of past *acts* of impropriety, violence, or disorder on the part of the employee is generally considered sufficient to forewarn the employer who selects or retains such employee in his service that he may eventually commit an assault, although not every infirmity of character, such, for example, as dishonesty or querulousness, will lead to such result.' ") (citation omitted).

Likewise, I believe that whether plaintiff has raised a genuine issue of material fact as to the Catholic Diocese of Grand Rapids' vicarious liability for Ms. Simon's sexual assault of plaintiff warrants further review. Under *Hamed v Wayne Co*, 490 Mich 1, 12 (2011), an employer may be held vicariously liable for an employee's criminal conduct when "an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." To satisfy the first prong of this test, there must be sufficient similarity between the prior conduct of the employee and the conduct at issue as to lead a reasonable employer to recognize the prior conduct as an "inevitable prelude" to criminal sexual conduct or as conduct that would "inexorably lead to criminal sexual conduct." *Brown*, 478 Mich at 555; see also *Hamed*, 490 Mich at 16 (holding that a

4

plaintiff's prior aggressive conduct was insufficient to put a defendant on notice for purposes of vicarious liability because it would not "inevitably lead to acts of criminal sexual conduct"). As discussed earlier, I believe this Court should consider whether the record evidences conduct by Ms. Simon that a jury could find to have been sufficiently similar to, or an "inevitable prelude" to, the sexual molestation of plaintiff as to put the Diocese on notice that she posed a threat of criminal conduct to a specific victim or victims.

MCCORMACK, C.J., and BERNSTEIN, J., join the statement of CAVANAGH, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 17, 2020



Clerk

t0414